## SUPREME COURT

### OF THE

## STATE OF LOUISIANA.

—◦✦◦—

EASTERN DISTRICT, JUNE TERM, 1823.

—◦✦◦—

East'n District.
June. 1823.

〰〰〰

BROWN & AL.
vs.
DUPLANTIER.

### BROWN & AL. vs. DUPLANTIER.

Many parts of the Civil Code apply to commercial cases. When the defect of the thing sold is established—there is no need of an allegation of fraud or warranty.

An action quanti minoris, lies for a vendee who has sold the thing. Prescription is presumed to be waved, when not pleaded.

It is no defence to an action quanti minoris, that the vendee sold the the thing advantageously.

APPEAL from the court of the first district.

MARTIN, J. delivered the opinion of the court.

The plaintiffs allege they purchased from the defendant several bales of cotton, and particularly thirty-three bales, numbered from 107 to 139, weighing 11,829 pounds, as good and merchantable, and equal in quality to the portion of said cotton on the exterior parts of said bales ; whereas, in fact, they were plated with a thin plating of good cotton, while the interior parts were filled with blue and inferior cotton, a deception that could not be discovered by the plaintiffs or their agents, at the time of the sale.

There is an averment that the exterior cot- East'n District.
ton was worth in Liverpool, the port to which *June*, 1823.
the bales were shipped, 11 3-4*d* *sterl.*[*] per BROWN & AL.
pound, while the interior was only worth 9*d*. DUPLANTIER.
2 *farthings* ; so that, if the whole cotton had
been equal to the sample shown, which was of
the kind in the exterior of the bales, it would
have been sold in Liverpool for £555, 17*s* 10*d*.
*sterling*, or $2470 50 cents ; while it only sold
for £490, 12*s*. 2*d*. or $2220. They paid 14
cents per pound for said cotton to the defen-
dant, while, had they not been deceived, they
would not have paid more than 11 cents.

The defendant pleaded the general issue.

There was judgment for the defendant, the
district court being of opinion, that " as the
plaintiffs had parted with the cotton before the
institution of the suit, they thereby lost their
right to the action *quanti minoris*." The judg-
ment refers generally to the Civil Code. The
plaintiffs appealed.

The testimony, taken in Liverpool, fully es-
tablishes the unfair packing ; but the overseer
of the defendant testified, that all the crop was
ginned and packed under his immediate inspec-
tion, and no fraud was committed.

VOL. I. (N. S.)    40

BROWN & AL.
*vs.*
DUPLANTIER.

The appellants' counsel urges, that

1. The latent defect in the bales, left to the plaintiffs the choice of insisting on a rescision of the sale, on return of the cotton, or of requiring a reduction of the price. *Civil Code,* 356, *art.* 67, 68, 70. *Cusaregis,* 176, *n.* 1–10. *Cur. Phil. Commer. Terr.* 1, 13, *n.* 8, 29.

2. The right of demanding a reduction is not destroyed or affected by the sale, *Cur. Phil. id. c.* 13, *n.* 27. *D.* 21, 1, 46.

3. Prescription was not, and must be, pleaded, 10 *Martin,* 184.

The appellee's counsel insists, that

1. This case must be determined according to the law merchant, and according to the Civil Code. 2 *Martin,* 326, 462. 4 *id.* 92. 12 *d.* 498, 500. *Civil Code,* 260, *art* 7.

2. The action cannot be maintained, as there is no allegation of fraud, or a warranty, 12 *Johnson.*

3 The plaintiffs were bound to have instituted their action, within six months from the discovery of the defect. *Civil Code,* 358, *art.* 75. 11 *Martin,* 11, 16.

4. The sale of the cotton before the institution of the suit, while a loss on the sale is nei-

ther alleged nor proved, prevents the plaintiffs' <span>East'n District.<br>*June*, 1823.</span> recovery, *Civil Code*, 356, *art.* 70.

5. The plea of prescription is not necessary, <span>BROWN & AL.<br>*vs.*<br>DUPLANTIER.</span> as the plaintiffs put the time of the discovery of the defect in issue, by one of the facts, he submitted to the jury.

6. As the suit was not instituted till six months after the sale, an averment of the discovery within that time was essential, and the absence of it dispenses with the plea of prescription. *Id.* 358, *art.* 75.

I. It is incorrect to say, as a general principle, that the provisions of the Civil Code are inapplicable to commercial transactions. It is true indeed that the rules *peculiar* to commercial transactions are established by the laws relating to commerce, *Civil Code*, 260, *art.* 170, *art.* 7 ; but it does not follow from these rules, that a great many of the provisions of the Code are not *common* to commercial and other transactions.

It was the evident intention of the makers of the Code, that its provisions relating to the contract of sale, should regulate commercial sales as well as others. They speak of the sale of goods, *merchandise*, produce or other

Eas*n-District.
June, 1823.

BROWN & AL.
vs.
DUPLANTIER.

objects; when we are referred to the laws relating to commerce, it is only in regard to provisions *peculiar* to commercial transactions.

Now the obligation of a seller to explain himself clearly, to deliver the thing sold, and to warrant it to a certain extent, are equally applicable to commercial as to other sales. This court has held so in a variety of cases, as to the delivery of cotton or other merchandise, between merchants.

A planter who sells his produce to a mercant, is bound to act with that good faith, which he might insist upon in the purchase of a slave from one of his neighbors.

He has a right to require a declaration of the hidden defects of the negro, and may demand damages, if he was imposed upon. So he is bound to indemnify the merchant, to whom he sells his cotton, if his agent (even without his knowledge) have plated it, or placed a heap of cotton seed or other trash in the middle of the bale, as he would himself require indemnification, from a goldsmith, who would sell him a vase as wholly of the precious metal, if any part of it was of a baser one.

II. When once the apparent defect is esta-

blished, the remedy is independent from the existence of fraud, or a special warranty or the vendor's knowledge ; for it is clear, that the price of a vessel of one of the precious metals would not be given, had it been known that the vessel purchased was not wholly, but partially so, only of pure meta , *Id.* 356, *art.* 67—69.

III. The sale of the thing may be objected to a plaintiff who seeks a rescision ; for he cannot demand the whole price paid, while he has disabled himself from returning the thing ; otherwise when a diminution of the price only is sought for.

IV. Every period within which a party must or is directed to institute his action, is established for the benefit of the defendant, who is conscientiously bound not to avail himself unrighteously, of this legal advantage provided for him.    It is his duty to abstain from the use of it, while his just defence does not require it. When, therefore, a defendant answers the plaintiff's petition, without urging that the suit was not brought within the time fixed by law, the court is bound to conclude that the defendant, yielding to the obligations of *morality,*

East'n District.
*June,* 1823.

BROWN & AL.
*vs.*
DUPLANTIER.

declines a legal advantage, which justice reproves.

The prayer of the petition is for damages, to indemnify the plaintiff, for the injury sustained, by a return of part of the price ; and we think the district court erred in concluding. that the plaintiffs lost th ir right of action, by disposing of the cotton. Whether a vendor, who has a deceit practised on him in the sale, gain or lose by the subsequent sale of the thing, his right to the action *quanti minoris* remains perfectly the same. This subsequent sale is his own act : it could not place his vendor in a worse situation ; neither do we think it may place him in a better. The second sale is at the first vendor's risk ; he is not bound to account for any part of the profits he makes thereby, as he could not claim a compensation for any loss resulting from it. The excess of price paid is in the hands of the first vendor *money*, which *ex equo et bono* he is bound to refund, money had and received to his vendee's use. The latter has the right to call it out of the former's hand, and this right is independent of any posterior act which may render the purchase beneficial or burdensome, in a greater or less degree. If it were otherwise, it would follow, that the action

*quanti minoris* could not be supported, until the thing sold was disposed of, by the vendee, as until this, the result of the operation could not be ascertained. An argument directly at war with that of the defendant's counsel, in urging that the sale of the thing destroys the vendee's right of action.

It is, therefore, ordered, adjudged and decreed, that the judgment be annulled, avoided and reversed.

In proceeding to give the judgment, which, in our opinion, the district court ought to have pronounced, we find the following facts ascertained by the jury.

1. On the 16th of February, 1821, the plaintiff, purchased from the defendant (through the medium of a broker, who received a commisfrom both parties to the sale) 98 bales of cotton, at 16 1-2 cents for 65 bales, and 14 1-2 for 33. The last parcel weighed 12.503 pounds, and $1812 99 cents were paid therefor.

2. The 65 bales were sold as prime cotton; the 33 as good fair cotton of an inferior quality. The cotton, in the exterior of the 33 bales, was of the quality it was sold for, and worth the price given.

East'n District.
*June,* 1823.

BROWN & AL.
*vs.*
DUPLANTIER.

3. The fair cotton, in the exterior, formed but a small part of that in the 33 bales. They were plated with a thin plating of good fair cotton, over cotton of a much inferior quality; and this was not known to the plaintiffs or their agents.

4. On sales of cotton, in New Orleans, it is not customary to make any other examination, than to draw samples from the outer part of the bales,—to the depth of an inch or an inch and a half,—and rarely deeper.

5. After the purchase, the cotton was shipped to Liverpool and thoroughly examined, and the defect discovered—but there is no evidence of the precise time of this discovery. The cotton on the exterior of the bales, was then worth, in Liverpool, 2*a* per pound more than that it covered.

6. At the time of the sale, the cotton in the 33 bales, in its actual state, was not worth more than 11 cents, and $467 60, were paid above its value, and more than would have been given had the defect been known to the vendees.

7. There is no evidence of the time of sale in Liverpool, nor of the price obtained.

8. The cotton was classed and examined by a broker, paid by the vendor and vendees. The

East'n District.
June, 1823.

33 bales were not sold as of an inferior quality, but as inferior to the other parcel.

9. It was turned out by the defendant's agent, and submitted on, and sold by, samples drawn by the broker.

BROWN & AL.
vs.
DUPLANTIER.

It appears to us, the only measure of damages is the difference in the price given, and that which would have been given, had there been no deception in the bales. This difference the jury have found, and the district court, in our opinion, ought to have given judgment therefor.

It is accordingly ordered, adjudged and decreed, that the plaintiffs recover from the defendant, the sum of $467 60 cents, with costs of suit in both courts.

*Livermore* for the plaintiffs, *Duncan* for the defendant.